# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| AMERICAN TRUCKING ASSOCIATIONS, INC. | ) ) ) | Case No. 10-56465 |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) ) | |
| THE CITY OF LOS ANGELES, THE HARBOR DEPARTMENT OF THE CITY OF LOS ANGELES, THE BOARD OF HARBOR COMMISSIONERS OF THE CITY OF LOS ANGELES, | ) ) ) ) ) ) ) ) ) | **UNOPPOSED MOTION FOR RECONSIDERATION OF MOTION FOR EXPEDITED APPEAL UNDER CIRCUIT RULES 27-10 AND 27-12** |
| Defendants-Appellees, | ) ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, INC., SIERRA CLUB; COALITION FOR CLEAN AIR, INC., | ) ) ) ) ) ) | |
| Defendant-intervenors – Appellees. | ) ) ) | |

Christopher C. McNatt Jr.
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, LLP
2 North Lake Avenue, Suite 460
Pasadena, California 91101
Tel: (626) 795-4700
Fax: (626) 795-4790


Robert Digges, Jr.
rdigges@trucking.org
Chief Counsel, ATA Litigation Center
AMERICAN TRUCKING
ASSOCIATIONS, INC.
950 North Glebe Road
Arlington, VA 22203
Tel: (703) 838-1889
Fax: (703) 838-1705

Counsel for Plaintiff-Appellant,
AMERICAN TRUCKING ASSOCIATIONS, INC.

W. Stephen Cannon
scannon@constantinecannon.com
Seth D. Greenstein
sgreenstein@constantinecannon.com
Stephen S. Anderson
tanderson@constantinecannon.com
CONSTANTINE CANNON LLP
1301 K Street, NW., Suite 1050 E
Washington, DC  20005
Tel: (202) 204-3500
Fax: (202) 204-3501

To the Court and Deputy Clerk Alihandra M. Totor:

Appellant American Trucking Associations, Inc. ("ATA") respectfully requests reconsideration of the previously submitted Unopposed Motion to Expedite Appeal. The original motion was filed November 2, 2010 and the Order denying the requested relief was issued by Deputy Clerk Totor on November 4, 2010. As Rule 27-10(a)(2) requires the present motion be brought within 14 days of the order denying the original motion, the present motion is timely.

ATA's request is unopposed by the appellees, The City of Los Angeles, The Harbor Department of The City of Los Angeles, and The Board of Harbor Commissioners of The City of Los Angeles Port of Los Angeles (collectively "POLA") and the intervenor-appellees, Natural Resources Defense Council, Inc., Sierra Club, and Coalition for Clean Air, Inc. (collectively "NRDC").[1] While POLA and NRDC do not agree that the motor carriers are being harmed they do not oppose the appeal of this matter being expedited. ATA understands POLA intends to file a short response summarizing its position regarding the present motion.

This is the third time this matter has been before this Court. The two prior appeals were from orders following ATA's request for a preliminary injunction against implementation of the Concession Agreements of POLA and POLB which were part of a comprehensive program that would bar from entry to the Ports any of the then approximately 1,300 motor carriers (which in turn subcontract with some 17,000 independent truck owner-operators) at that time serving the ports

---

[1] The City of Long Beach, The Harbor Department of The City of Long Beach, and The Board of Harbor Commissioners of The City of Long Beach (collectively "POLB") are not parties to this appeal, as a resolution of ATA's claims against POLB was reached during the course of the underlying litigation.

unless the motor carrier executed the ports' respective Concession Agreements. Among the requirements placed on motor carriers subject to the POLA Concession Agreement are:

    a. A phased-in prohibition against the use of independent owner-operators in the transportation of containers to and from the Port, thereby establishing over time a mandate for the use of only employee-drivers.

    b. A requirement for an off-street parking plan for all motor carrier fleets operating at the Port;

    c. Utilization of POLA-mandated placards on each truck; and

    d. Submission of documentation to confirm the motor carrier meets POLA's standards of financial capability to perform its concession agreement obligations.

Following the second appeal, resolution was reached between POLB and ATA. The litigation between POLA and ATA continued through trial. Ultimately, the District Court found in favor of POLA and dissolved the preliminary injunction, thus permitting POLA to move forward with implementation of its Concession Agreement. ATA promptly appealed from the adverse judgment. ATA also sought and obtained a stay of enforcement of a portion of the judgment (specifically, the issue identified in point (a) above), thus again obtaining an injunction against POLA's enforcement of the employee mandate in its Concession Agreement.

///

///

///

///

This Court recognized on the original appeal in this matter that ATA's members would be irreparably harmed if they were forced to comply with the terms of the Concession Agreement mandated by the Port of Los Angeles. *American Trucking Associations, Inc. v. The City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009). That harm was detailed in length in the Court's opinion, but bears repeating here:

> The district court correctly noted that the motor carriers had two choices: Sign the Concession agreements, or refuse to sign them. If they sign, said the court, the harm will merely be monetary, and that will not usually support injunctive relief. On the other hand, said the court, if they do not sign, any harm is merely speculative, and that, also, will not support injunctive relief, although a loss of goodwill and reputation can do so. We disagree on both counts because it appears that the motor carriers are being put to a kind of Hobson's choice, not entirely unlike that which faced the airlines in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). There, after deregulation of the airlines, the attorneys general of several states set out to regulate airline advertising and the compensation of passengers who gave up their seats on overbooked flights. *Id.* at 379, 112 S.Ct. at 2034. The Court pointed to the availability of injunctive relief where there was a threat of imminent proceedings by a state of a criminal or civil enforcement nature against parties who were affected by an unconstitutional act. *Id.* at 380-81, 112 S.Ct. at 2035. The Court opined as follows:
>
> > As we have described, the attorneys general of seven States, including petitioner's predecessor, had made clear that they would seek to enforce the challenged portions of the guidelines (those concerning fare advertising) through suits under their respective state laws. And Texas law, at least, imposes additional liability (by way of civil penalties and consumer treble-damages actions) for multiple violations.... [R]espondents were faced with a Hobson's choice: continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.
>
> *Id.* at 381, 112 S.Ct. at 2035-36 (citations omitted).
>
> While the case at hand lacks the precise penalty issues involved in *Morales*, a very real penalty attaches to the motor carriers regardless of how they proceed. That is an imminent harm.
>
> A motor carrier can refuse to sign the likely unconstitutional Concession agreements, and what will ensue, according to the record, is at the very least a loss of customer goodwill or, indeed, of the carrier's whole drayage business. It is apparent that a carrier could not pick up a customer's goods at the Ports, if it could not even get to those goods. That goodwill would

- 3 -

evaporate does not appear speculative at all. In fact, it is likely that all of that part of the carrier's business will evaporate, even if it does other things elsewhere. As to smaller companies that cannot afford the vast increase in capital requirements for the purchase of equipment and personnel expenditures needed to turn independent contractors into employees, the result would likely be fatal. And that means that those smaller carriers, and their employees, and even independent contractors who depend upon them, will be out of work. One wonders why it should be thought that they should just put up with the loss any more than employees of a company should be forced to abide their wrongful termination and the resulting emotional damages and stress that termination causes. *See Nelson v. NASA*, 530 F.3d 865, 882(9th Cir. 2008).

If a motor carrier, however, signs a Concession agreement, or both Concession agreements, its plight is not much better. First, it will have been forced to sign an agreement to conditions which are likely unconstitutional because they are preempted. Second, especially as to the Los Angeles Port Concession agreement, the carrier will be forced to incur large costs which, if it manages to survive those, will disrupt and change the whole nature of its business in ways that most likely cannot be compensated with damages alone. If the Concession agreements were then held to be unconstitutional, it would be faced with either continuing in that form, or, to the extent it could, unwinding that and returning to the old form. Nor is the fact that the Los Angeles Port Concession Agreement employment provision is scheduled to phase in over a five-year period of any help. Even then, employment must equal twenty percent by the end of 2009, but, as ATA points out, that does not mean that a motor carrier can simply flip a switch at the end of 2009 and have employees rather than independent contractors. It will, instead, be forced into making substantial changes commencing immediately. The same is true of requirements for obtaining parking space, and providing reports and information and the like.

As the above underscores, the Los Angeles Port Concession agreement is the most disruptive and is likely to cause the most harm regardless of which choice a motor carrier makes. The Long Beach Port Concession agreement is less so. Still and all, if rejected by a motor carrier, the carrier will face the problems already noted. If accepted, the agreement will likely force the motor carrier to adhere to unconstitutional conditions and will cause a good deal of economic harm in the interim. But, although there is less disruption, the constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm. The Supreme Court has implied as much. *See Morales*, 504 U.S. at 381, 112 S.Ct. at 2035-36 (referring to the injury from obeying an unconstitutional law); *see also Nelson*, 530 F.3d at 882 (holding that "constitutional violations cannot be adequately remedied through damages"). In short, motor carriers should not be required to adhere to the various unconstitutional provisions in the Ports' agreements, and are likely to suffer irrevocably if forced to do that or give up their businesses.

///

///

- 4 -

We end this part of the discussion essentially where we began, but here with a quotation (or with all of the changes we have wrought, really a paraphrase) of what we said in *Nelson*, 530 F.3d at 881-82 (citations omitted):

> Appellants ... face a stark choice-either violation of their constitutional rights or loss of their[businesses]. The district court erroneously concluded that Appellants will not suffer any irreparable harm because they could be retroactively compensated for any temporary [loss or expenses]. It is true that "monetary injury is not normally considered irreparable," and the [motor carriers] who choose to give up their [businesses] may later be made whole financially if the policy is struck down. However, in the meantime, there is a substantial risk that a number of [motor carriers] will not be able to finance such a principled position and so will be coerced into submitting to the allegedly unconstitutional [Concession agreements]. Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm. Moreover, the loss of one's [business] does not carry merely monetary consequences; it carries emotional damages and stress, which cannot be compensated by mere back payment of [losses].

Therefore, there is a likelihood of irreparable damages in this case.

*Id.* at 1057–1059 (footnotes omitted).

With due respect ATA believes that on consideration of the original motion the Deputy Clerk may not have fully considered the prior history of this case or fully understood the facts that show irreparable harm will be suffered by ATA's members and other impacted motor carriers if the appeal is not expedited. The harms that will befall the motor carriers are no different now than they were when this Court issued its first opinion in the case.

The present posture of the case is concededly different than it was at the time this Court issued its original opinion in 2009. Admittedly, the most egregious and far-reaching requirement of the Concession Plan, the employee-driver mandate, has been enjoined pending this appeal. However, all other terms of the Concession Agreement, including those that were enjoined following remand after this Court's original opinion, are presently enforceable thus putting the motor carriers in a position of suffering irreparable harm as to those elements in exactly the same manner as detailed by this Court in its original opinion. Even the District Court,

- 5 -

which has allowed the Concession Agreement to stand, has acknowledged that the motor carriers are suffering irreparable harm by having to comply with the off-street parking mandate of the program:

> The Court finds that motor carriers will suffer irreparable injury during the pendency of the appeal if the off-street parking requirement goes into effect. ATA alleges its members will suffer economic harm in order to comply with the off-street parking requirement. *See* Mot. at 17 ("compliance with the off-street parking requirement will impose average costs of more than $21,000 per truck. . . ."). Although economic injury alone generally does not support a finding of irreparable injury, ATA's members are likely to suffer some measure of irreparable harm because there is no evidence that motor carriers can recoup their economic losses through a damage award or by some other means.

(USDC CD CAL Case 08-4920 CAS-CT(x) Docket Entry 326 at 6)

The Port has announced that the off-street parking requirement will be imposed so as to require motor carriers to have a plan in place by January 1, 2011 and to actually have available off-street parking spaces by July 1, 2011. Consequently, motor carriers will be faced with buying or leasing property to comply with this provision well before a decision on its legality is likely to be made by this Court under the current schedule. Expedition of hearing and deciding this matter will mitigate the harm motor carriers will inevitably face in complying with this challenged provision.

It is essential to the businesses that provide drayage services at the Port of Los Angeles that the present appeal be resolved on an expedited basis to minimize the irreparable harms they are facing and to bring long-overdue certainty to how they will have to conduct their business operations at the Port.

ATA requests that the briefing schedule be advanced by two months, so as to allow oral argument in May 2010. The reporter's transcript was timely requested, and given that the parties have already obtained certified copies the proceeding during trial the preparation time required of the reporter in this instance will be minimal. Per a scheduling order issued on September 16, 2010, the Court

has established the current briefing schedule to permit the filing of the opening brief not later than February 28, 2011, the answering briefs by March 30, 2011, and the reply brief within fourteen days of the Appellees' answering briefs. The proposed briefing and hearing schedule is:

Opening brief:          December 28, 2010

Answering briefs:       January 31, 2011

Reply brief:            Within 14 days of answering briefs

Oral argument:          May 2011

Expedition is warranted so that a necessary level of certainty can be reached on the terms under which motor carriers can serve their customers when draying containers to and from the Port of Los Angeles.

## CONCLUSION

Wherefore, ATA respectfully requests this Honorable Court to GRANT its motion and expedite the briefing and hearing schedule by two months and set oral argument in May 2011.

Respectfully submitted,

Dated:  November 17, 2010          SCOPELITIS, GARVIN, LIGHT,
                                   HANSON & FEARY, LLP

                                   By:    s/ *Christopher C. McNatt, Jr.*
                                          Christopher C. McNatt, Jr.
                                          Attorneys for Plaintiff-Appellant
                                          American Trucking Associations, Inc.

CERTIFICATE OF SERVICE

I, hereby certify that on November 17, 2010 I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  Upon their written consent I have e-mailed the forgoing to the following non-CM/ECF participants (some listed persons may also be CM/ECF participants):

FOR DEFENDANTS-APPELLEES THE CITY OF LOS ANGELES, THE HARBOR DEPARTMENT OF THE CITY OF LOS ANGELES, and THE BOARD OF HARBOR COMMISSIONERS OF THE CITY OF LOS ANGELES

Steven S. Rosenthal
Alan K. Palmer
Tiffany R. Moseley
David L. Cousineau
Susanna Y. Chu
Kaye Scholer, LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, DC 20005-2327
srosenthal@kayescholer.com
apalmer@kayescholer.com
tmoseley@kayescholer.com
dcousineau@kayescholer.com
schu@kayescholer.com

Thomas A. Russell
        General Counsel
Joy M. Crose
        Assistant General Counsel
Simon M. Kann
        Deputy City Attorney
LA City Attorney's Office
425 South Palos Verdes Street
San Pedro, California 90731
trussell@portla.org
jcrose@portla.org
skann@portla.org

Bryant Delgadillo
Kaye Scholer, LLP
1999 Avenue of the stars, Suite 1700
Los Angeles, CA 90067
bdelgadillo@kayescholer.com

- 8 -

FOR DEFENDANT-INTERVENORS-APPELLEES NATURAL RESOURCES DEFENSE COUNCIL, INC., SIERRA CLUB and COALITION FOR CLEAN AIR

David Pettit
Melissa Lin Perrella
Adriano Martinez
Natural Resources Defense Council, Inc.
1314 Second Street
Santa Monica, California 90401
dpettit@nrdc.org
mlinperrella@nrdc.org
amrtinez@nrdc.org

FOR AMICUS CURIAE NATIONAL RETAIL FEDERATION

Jeffrey Bossert Clark
Kirkland & Ellis, LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
jclark@kirkland.com

/S/ *Christopher C. McNatt, Jr.*
Christopher C. McNatt, Jr.